**GENERAL MOTORS CORPORATION,
Employer–Appellant Below, Appellant,**

v.

**Curtis BURGESS, Jr.,
Employee–Appellee
Below, Appellee,**

**and**

**Industrial Accident Board of the State
of Delaware, In and for New Castle
County, Appellee.**

Supreme Court of Delaware.

Submitted: May 10, 1988.
Decided: Aug. 8, 1988.

---

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, on behalf of appellant.

Robert W. Ralston, Wilmington, on behalf of appellee.

Before HORSEY, MOORE, WALSH and HOLLAND, JJ., and ALLEN, Chancellor * (constituting the Court en banc).

HOLLAND, Justice:

The appellant, General Motors Corporation ("GMC"), appeals from an order of the Superior Court affirming a decision of the Industrial Accident Board (the "Board"). In its decision, the Board ordered GMC, *inter alia,* to pay for certain vocational educational services as medical expenses of the appellee, Curtis Burgess, Jr. ("Burgess"), pursuant to 19 *Del.C.* § 2322. The Board also granted separate applications for attorney's fees by Burgess pursuant to 19 *Del.C.* § 2127.

We have concluded that 19 *Del.C.* § 2322 provides no basis for the Board to order an employer to pay for vocational rehabilitative services at the request of an employee as part of the medical services to which an employee is entitled. Therefore, we reverse the Superior Court's affirmance ·of that decision by the Board. However, we find that the Board acted within its discretion in awarding separate attorney's fees to Burgess pursuant to 19 *Del.C.* § 2127(a). The Superior Court properly affirmed that decision by the Board.

### Facts

On July 2, 1980, Burgess was injured at work when he was struck in the head by an air gun. GMC admitted that Burgess' injury was compensable and entered into an agreement to pay him total disability benefits. Burgess has not resumed work at the GMC plant since his accident. Burgess has been treated by Dr. Carl Turner, M.D., a specialist in internal medicine, since August

* Sitting by designation pursuant to Del. Const.   art. IV, § 12.

1980 and by Dr. Jay Weisberg, a psychiatrist, since July 1981.

Several years after Burgess' industrial accident, GMC filed a petition with the Board to terminate Burgess' total disability benefits. GMC also filed an application for reimbursement from the Second Injury and Contingency Fund. In response to GMC's action, Burgess filed a petition for permanent disability benefits based upon impairment of his cerebral function. Ancillary to his petition for permanent disability benefits, Burgess requested that GMC be ordered to pay for certain vocational rehabilitation expenses[1] and to pay certain outstanding medical bills from his treating physicians.

The Board held a hearing on February 21, 1986. The Board denied GMC's petition to terminate Burgess' total disability benefits. The Board also denied Burgess' request for permanent disability benefits.[2] However, the Board ordered GMC to pay for Burgess' medical expenses, pursuant to 19 *Del.C.* § 2322(a), and to pay for his vocational rehabilitation expenses, pursuant to 19 *Del.C.* § 2322(c).[3] The Board also granted Burgess' application for an award of three separate attorney's fees on each issue presented by him to the Board: "one for total disability, one for medical expenses and one for vocational rehabilitation expense." The Board denied GMC's request for reimbursement from the Second Injury and Contingency Fund.

GMC appealed to the Superior Court from those portions of the Board's award that ordered GMC to pay for Burgess' vocational rehabilitation expenses, that awarded Burgess' three separate attorney's fees, and that denied GMC's application for reimbursement from the Second

Injury and Contingency Fund. The various appeals by GMC were consolidated by the Superior Court. The Superior Court affirmed the Board's decision requiring GMC to pay the cost of Burgess' vocational rehabilitation and his attorney's fees. The Superior Court reversed the Board's denial of GMC's request for reimbursement from the Second Injury and Contingency Fund. The Superior Court remanded the latter issue to the Board for further findings.[4]

### Contention of the Parties

GMC contends that the Board has no authority under 19 *Del.C.* § 2322 to order an employer to pay for vocational or rehabilitation services as reasonable medical expenses of an injured employee. GMC argues that the provisions of Section 2322 are clear and that the term "medical services" cannot be interpreted to encompass a vocational rehabilitation service. Burgess contends that when the Delaware General Assembly amended 19 *Del.C.* § 2353(a) to include "vocational rehabilitation services" within the definition of "medical services," it demonstrated a legislative intent to include vocational rehabilitation services within the definition of "medical services" in Section 2322(a). GMC argues that when the General Assembly included a provision for vocational rehabilitation services within the definition of medical services in 19 *Del.C.* 2353(a), there was no implicit amendment of the definition of medical services in Section 2322(a) because the two sections of the Delaware Workmen's Compensation Law address different concerns.

The Superior Court found Burgess' argument to be more persuasive. The Superior Court concluded that "[t]here was substantial evidence in the record to support the

---

1. These expenses resulted from Burgess' taking courses at Delaware Technical and Community College.

2. Neither of these rulings have been appealed.

3. The Board held as follows:
   The Board finds that the claimant shall be entitled to have his reasonable vocational expenses related to the industrial accident taxed as costs against the employer pursuant to 19 *Del.C.* § 2322(c). The Board finds that this course of vocational rehabilitation at the De-

laware Technical and Community College resulted on a referral by Dr. Weisberg and Dr. Weisberg is of the opinion that this may be beneficial to the claimant.

4. The Superior Court's interlocutory decision to reverse and remand on this issue has not been appealed. That decision has been treated by the parties and interpreted by this Court to be a separate and distinct issue for the purposes of appeal.

Board's [determination] ... that attendance at Community College was reasonable vocational rehabilitation for employee in this case."

### History of Section 2322

The Board cited and relied upon Section 2322(c) in making its award to Burgess. However, an examination of the entire section, and its history, shows that the Superior Court properly addressed Section 2322(a) in reviewing the Board's award. These subsections read as follows:

> (a) During the period of disability the employer shall furnish reasonable surgical, medical, dental, optometric, chiropractic and hospital services, medicine and supplies, including repairing damage to or replacing false dentures, false eyes or eye glasses and providing hearing aids, as and when needed, unless the employee refuses to allow them to be furnished by the employer.
>
>     . . . .
>
> (c) Upon application made to the Board by the injured employee or someone in his behalf, the Board may, at its discretion, require the employer to furnish additional services, medicines and supplies of the kind mentioned in subsection (a), as and when needed, for such further period as it shall deem right and proper. . . .

19 *Del.C.* § 2322(a), (c) (1985 & Supp.1986). Subsection (a) applies during a "period of disability," while subsection (c) applies during "such further period" of time as the Board may determine. Since the Board expressly ruled that Burgess' disability was continuing and that his absence from work is compensable, subsection (a) applies in determining what services GMC must furnish to Burgess.

When the Delaware Workmen's Compensation Law was originally adopted, there was no provision for medical care for an employee after his period of disability ended. An employer was only required to provide "all medical and surgical aid and assistance that may be reasonably required, including hospital service, not to exceed Twenty-five Dollars in value,"

which services had to be provided even during the fourteen-day waiting period for disability benefits to begin. 29 *Del.Laws,* ch. 233; *Del.Rev.C.,* ch. 90, § 3193h (1915). The concept of limited medical services continued until the statute was amended in 1955. *See* 50 *Del.Laws,* ch. 339, § 5. Prior to the 1955 amendment, the introductory words of Section 2322(a) read: "During the first 30 days of the injury the employer shall furnish. . . ." 19 *Del.C.* § 2322(a) (1953). Thus, under this version of the statute, the employer had an unlimited obligation to furnish reasonable medical care for thirty days only. After that period the Board could order reasonable medical services to continue for whatever period of time it deemed "right and proper," pursuant to subsection (c). 19 *Del.C.* § 2322(c) (1953).

The applicability of Section 2322(a) was extended in 1955 from thirty days to encompass "the period of disability." The variety of services which an employer must provide has also been expanded over the years from the original medical, surgical, and hospital services. The employer's duty to provide dental, optometric, and chiropractic services are now prescribed by statute. 19 *Del.C.* § 2322(a) (Supp.1986). There are now also statutory requirements for the employer to provide false dentures, false eyes, eyeglasses, and hearing aids. *Id.* The issue in this case is whether the concept of reasonable medical services under Section 2322(a) has been *implicitly* expanded to include the cost of vocational education as an obligatory employer liability.

### History of Section 2353(a)

The Superior Court held that a reference to "reasonable medical services" in Section 2353(a) should be used in construing Section 2322(a). The Superior Court concluded:

> § 2322 and § 2353 are ... parallel sections: § 2322(a) defining what employer is obligated to furnish to the employee, and § 2353(a) defining what the employee is obligated to accept from the employer if tendered. Reasonable medical

services should mean the same thing in both contexts.

As it is presently worded, Section 2353(a) provides:

**§ 2353. Forfeiture of right to compensation.**

(a) If the employee refuses reasonable surgical, medical and hospital services, medicines and supplies tendered to him by his employer, he shall forfeit all right to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal. Reasonable medical services shall include, if the Board so finds, vocational rehabilitation services offered by any public or private agency.

Where rehabilitation services require residence at or near the public or private agency away from the employee's customary residence, reasonable costs of his board, lodging and travel shall be paid for by the employer. Refusal to accept rehabilitation services pursuant to order of the Board shall result in a loss of compensation for each week of the period of refusal.

19 *Del.C.* § 2353(a) (1985).

Prior to an amendment in 1972, 58 *Del. Laws,* ch. 529, § 2, Section 2353(a) did not contain any reference to vocational rehabilitation services. *See* 19 *Del.C.* § 2353(a) (1953). The only rehabilitation services covered by Section 2353(a), or by Sections 2322(a) and 2322(c), were those services under the control of a physician, since such services were construed to be encompassed within the concept of medical services.

In the framework of workmen's compensation, rehabilitation is generally considered to be of two types: physical and vocational. The former is simply an extension of medical treatment and undoubtedly would fall within the purview of existing statutes dealing with the em-ployer's obligation to provide medical services and the employee's duty to accept them. The second aspect of rehabilitation, *i.e.* vocational, does not strictly speaking, involve the supplying of medical services but is, instead, a means for retraining an injured employee in an effort to direct his limited physical capability into other useful channels of productivity. While the purpose is laudable, its use in this case is proper only if the Board had the authority to require it as a condition of receiving compensation.

*Bender v. Deflon Anderson Corp.,* Del.Super., 298 A.2d 346, 348 (1972) (citation omitted) (applying Section 2353(a) as it read prior to the 1972 amendment).

In 1974, Section 2353(a) was further amended in two respects by the addition of a second paragraph. 59 *Del.Laws,* ch. 454, § 7.[5] First, the 1974 amendment made it clear that travel and lodging expenses had to be paid by the employer in connection with employer initiated rehabilitation services. This amendment was similar to the requirement for employers to pay travel expenses at employer requested medical examinations.[6] Second, the penalty for an employee who refused rehabilitation services was also changed by the 1974 amendment. This penalty was different from the penalty that was generally applicable under Section 2353(a) to the refusal of other services.[7]

### General Principles of Statutory Construction

We precede our analysis of the Superior Court's interpretation of Section 2322 based upon the amendment to Section 2353 by reviewing the general standards of statutory construction in Delaware. "When this Court is faced with a novel question of statutory construction, as here, we 'must

---

**5.** The 1974 amendment became effective July 1, 1975. 59 *Del.Laws,* ch. 454, § 15.

**6.** Despite the fact that a request for employers to pay travel expenses under Section 2322 had been previously denied, *M & M, Inc. v. Wade,* Del.Super., 297 A.2d 403, 405 (1972), the legislature did not amend Section 2322 to require employers to pay for travel expenses.

**7.** The penalty for refusing rehabilitation services was to be imposed after the Board had ordered the employee to accept them. Prior to this enactment, an employee refused services under Section 2353(a) "at his own risk." *Wilmington Hous. Auth. v. Gonzalez,* Del.Super., 333 A.2d 172, 175 (1975).

seek to ascertain and give effect to the intention of the Legislature as expressed in the Statute itself.' " *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 230 (1982) (quoting *Keys v. State*, Del. Supr., 337 A.2d 18, 22 (1975) (per curiam)). "In performing this analysis, we give the statutory words their commonly understood meanings." *Id.* (citing *Moore v. Chrysler Corp.*, Del.Supr., 233 A.2d 53, 55 (1967)).[8]

Furthermore, this Court may not assume that an omission "was the result of an oversight on the part of the General Assembly." *Giuricich v. Emtrol Corp.*, Del. Supr., 449 A.2d 232, 238 (1982) (en banc). *See also Norman v. Goldman*, Del.Super., 173 A.2d 607, 610 (1961). "The Legislative body is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute, it is reasonable to assume that a distinction between the terms was intended." *C & T Associates, Inc. v. Government of New Castle County*, Del.Ch., 408 A.2d 27, 29 (1979), *quoted in Giuricich v. Emtrol Corp.*, 449 A.2d at 238. "Similarly, where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it." *Giuricich v. Emtrol Corp.*, 449 A.2d at 238. "The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature." *Id.* When ambiguity exists in a statute, there is judicial discretion to construe it according to general standards of statutory interpretation and construction. *Id.; Daniels v. State*, Del.Supr., 538 A.2d 1104, 1109 (1988); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985) (en banc).[9] "[B]ut when no ambiguity exists, and the intent is clear from the language of the statute, there is no room for statutory interpretation or construction." *Giuricich v. Emtrol Corp.*, 449 A.2d at 238. *See also Daniels v. State*, 538 A.2d at 1109; *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246.

### Construing Sections 2322 and 2353 Together

■ We now apply these principles of statutory construction to determine if the Superior Court erred as a matter of law in construing Section 2322 to confer authority on the Board to require an employer to furnish vocational rehabilitation services to an injured employee. This Court has stated:

> [I]t is helpful to read § 2353 and § 2322 together. As has been noted, the § 2353 right of an employer to require an injured employee to avail himself of reasonable medical services, including vocational rehabilitation, "is simply a parallel of the employee's right [under § 2322] to require that such medical treatment be provided in the first instance at his request."

*Mosley v. Bank of Delaware*, Del.Supr., 372 A.2d 178, 179 (1977) (footnote omitted) (quoting *Bender v. Deflon Anderson Corp.*, Del.Super., 298 A.2d 346, 348 (1972)). The Superior Court relied upon this acknowledged parallelism in making its ruling. GMC does not deny that there are obvious parallels between Sections 2322 and 2353. However, GMC contends that proper statutory construction does not permit the use of these parallels as a basis for failing to acknowledge that the differences in each section must be treated by this Court as intended by the legislature.

We find that Sections 2322 and 2353(a) are not "parallel" in the context of the issue on appeal. Each section serves a different purpose. Section 2322 is a part

---

8. Indeed, Delaware statutory law mandates that:

   Words and phrases shall be read with their context and shall be construed according to their common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
   1 *Del.C.* § 303.

9. *See also Carper v. New Castle County Bd. of Educ.*, Del.Supr., 432 A.2d 1202, 1205 (1981) (en banc); *Balma v. Tidewater Oil Co.*, Del.Supr., 214 A.2d 560, 562 (1965).

of Subchapter II of the Delaware Workmen's Compensation Law. Section 2322 defines the scope of services that an employer shall be required to furnish to an injured employee. Section 2353 is a part of Subchapter III and provides an employer with relief from his statutory obligations, as defined by Section 2322, against an employee who refuses to accept reasonable services tendered by the employer.

In *Bender v. Deflon Anderson Corp.*, 298 A.2d at 348, and *Mosley v. Bank of Delaware*, 372 A.2d at 179–80, it was noted that Sections 2322 and 2353(a) were "parallel" with regard to the employer's duty to provide and the employee's duty to accept *medical services*. Neither *Bender* nor *Mosley* addressed the question of whether an employer could be required to provide vocational rehabilitation services. Both *Bender* and *Mosley* implicitly recognized that the *employer* was *not* under a duty to *provide* vocational rehabilitation services. Instead, these cases indicated that the *employee* was under a duty to *accept* vocational rehabilitation services should they be tendered by the employer. *See Bender v. Deflon Anderson Corp.*, 298 A.2d at 348; *Mosley v. Bank of Delaware*, 372 A.2d at 179–80. Thus, the parallel noted in *Bender* and *Mosley* does not permit this Court to read Section 2322 as having been implicitly amended to incorporate the explicit amendments of Section 2353(a) made in 1972 and 1974.

Moreover, the Delaware General Assembly has treated the rights and obligations of employees and employers as separate and distinct concepts. In 1972, the General Assembly amended Section 2353(a) by adding the last sentence to the first paragraph. 58 *Del.Laws*, ch. 529, § 2. This amendment required employees to undergo vocational rehabilitation at an employer's request and expense. Section 2353(a) was further amended in 1974 when the General Assembly added the second paragraph. 59 *Del.Laws*, ch. 454, § 7.[10] This amendment required employers to pay for the expenses employee's incurred which related to employer-initiated vocational rehabilitation. Despite the fact that the Superior Court had held, in a reported opinion, that employers had no obligation to pay travel expenses for employee-initiated medical examinations, Section 2322 was not amended. *See M & M, Inc. v. Wade*, Del.Super., 297 A.2d 403, 405 (1972).

In fact, when the General Assembly amended the Workmen's Compensation Law to require employers to pay employee expenses for employer-initiated vocational rehabilitation, the amendment to Section 2353(a) closely paralleled similar provisions found in 19 *Del.C.* § 2343. Section 2343 is also in Subchapter III, which outlines the employer's rights and obligations under the Workmen's Compensation Law. Section 2343 provides for employer-requested medical examinations of a disabled employee. The employer must pay the cost and travel expenses incurred by the employee as a result of those medical examinations.[11] However, the employee does not have a reciprocal right to demand such examinations at the employer's expense.[12] It appears that although the legislature has consistently required employers to pay all costs related to employer demands on an employee, the legislature has not given employees the right to make reciprocal demands at employer expense.

### Legislative Intent

■ The Superior Court held that: "Reasonable medical services *should* mean the same thing in both contexts," i.e., Sections 2322 and 2353(a). (Emphasis added). However, when a statute is unambiguous and the legislature's intent is clear, a court is not free to substitute its judgment for

---

**10.** *See supra* note 5.

**11.** To the extent *M & M, Inc. v. Wade*, Del.Super., 297 A.2d 403 (1972), was interpreted to exempt an employer from paying for travel expenses for employer-initiated activities, it was overruled in *Mosley v. Bank of Delaware*, Del. Supr., 372 A.2d 178, 180 (1977).

**12.** In the past, employers have agreed to voluntarily provide vocational rehabilitation services to employees. *See, e.g., Seaford Feed Co., Inc. v. Moore*, Del.Supr., 537 A.2d 184, 185 (1988). They may continue to do so in the future.

that of the legislature. *Giuricich v. Emtrol Corp.*, 449 A.2d at 238; *Daniels v. State*, 538 A.2d at 1109; *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246. A conclusion by this Court that the General Assembly really "intended" the rehabilitation amendment to Section 2353(a) to apply also to Section 2322(a) requires a finding that the legislature failed to recognize two significant matters.

The first legislative oversight would be a failure to realize which statutory provisions needed to be amended. Although it amended eleven other sections of Subchapters I–III of Title 19 of the Delaware Code when it amended Section 2353(a), the General Assembly did not amend Section 2322 to broaden the definition of "medical services" to include "vocational rehabilitation services." *See* 59 *Del.Laws*, ch. 454. We have previously noted that the General Assembly *only* amended Section 2353 to require employers to pay employees' travel expenses, despite a judicial holding that employers had no obligation to pay employees' travel expenses pursuant to Section 2322. *Cf. State v. Lillard*, Del.Supr., 531 A.2d 613, 614–18 (1987). We find that the precision with which the General Assembly has previously defined and expanded the scope of services required of employers precludes a judicial imputation of an intent to amend Section 2322 when it amended Section 2353. *See Giuricich v. Emtrol Corp.*, 449 A.2d at 238; *Daniels v. State*, 538 A.2d at 1109; *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246.

The second legislative oversight would be a failure to provide any guidelines for the award of a major new entitlement to injured employees at the employers' expense. Where other state legislatures have addressed the question of claimants' being able to demand vocational rehabilitation, they have provided many different answers. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 61.22 (1987); 4 *id.*, App. B, Table 15 (1988). Again, we find that the precision with which the Delaware General Assembly has amended the Workman's Compensation Law is not con-

sistent with a finding that it intended to confer a right but provided no guidelines to determine employee eligibility for the benefit created.

The alternative to finding the two foregoing legislative omissions is for this Court to find that the legislature intended only what its enactments purport to do: regulate those situations where an employer offers vocational rehabilitation services to an employee. The latter proposition is warranted by the wording and history of the legislation in this area of the law. We conclude that the legislature's determination to amend Section 2353(a) in 1972 and 1974 does not evidence a legislative intent to also amend Section 2322 in order to similarly redefine "medical services" to include "vocational rehabilitation services." *See Giuricich v. Emtrol Corp.*, 449 A.2d at 238; *C & T Associates, Inc. v. Government of New Castle County*, 408 A.2d at 29.

The matter of imposing a major new liability on employers, and defining the nature and extent of that liability, is far too important a matter to be decided by inference from a legislative enactment which did not clearly and expressly declare a legislative intent to create that liability. *See Federal United Corp. v. Havender*, Del. Supr., 11 A.2d 331, 337 (1940). *See also McInnis v. Town of Bar Harbor*, 387 A.2d 739, 742–43 (Me.1978). The situation in this case is similar to one that was before this Court in *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226 (1982). In *Kofron*, the injured employees sought major new rights which had been recognized in other states. *Id.* at 231. This Court concluded that the issue raised was a matter for the legislature because it was "best equipped to grapple with this issue" and the Court would not "act in its stead." *Id.*

The public policy arguments in favor of reciprocal or bilateral treatment of vocational rehabilitation services at the initiation of the employer *or the employee* must be addressed to the Delaware General Assembly. *See Federal United Corp. v. Havender*, 11 A.2d at 337. Any antinomy in the present Workmen's Compensation Law scheme of employee rights and bene-

fits must be resolved by statute and not by judicial fiat. *See Chrysler Corp. v. State,* Del.Supr., 457 A.2d 345, 349 (1983). The Delaware legislature has a demonstrated history of promptly and precisely responding to judicial decisions in the area of employees' rights. *See State v. Lillard,* 531 A.2d at 614–17.

### Attorney's Fees

█ Finally, we consider the Superior Court's affirmance of the Board's award of three attorney's fees to Burgess. GMC argues that at most Burgess is entitled to two attorney's fees: one for the litigation regarding GMC's petition to terminate his disability benefits, and one for the award of his vocational rehabilitation expenses in the event that GMC had not prevailed on this substantive issue on appeal. Therefore, GMC only contests the Board's award of attorney's fees to Burgess on the issue of the medical expenses of Burgess' treating physicians.

Burgess argues that each issue decided in his favor by the Board should be treated as a separate award of compensation for which he was entitled to the separate allowance of an attorney's fee. In fact, this Court has noted that there may be circumstances when allowance of separate attorney's fees is appropriate when the Board has made multiple awards to a claimant. *Mountaire of Delmarva, Inc. v. Glacken,* Del.Supr., 487 A.2d 1137, 1142 (1984). This Court's standard of review for present purposes is to determine whether the Board abused its discretion in awarding a separate attorney's fee under 19 *Del.C.* § 2127(a). *See Mountaire of Delmarva, Inc. v. Glacken,* 487 A.2d at 1141–42.

The record reflects that GMC contested the necessity of Burgess' medical treatment. That issue was not resolved prior to the Board's hearing. Under the circumstances of this case, we find that the Board did not abuse its discretion in awarding Burgess a separate attorney's fee with respect to the recovery of payment for his medical expenses. *See Seaford Feed Co., Inc. v. Moore,* Del.Supr., 537 A.2d 184, 186 (1988).

### Conclusion

The judgment of the Superior Court, affirming the decision of the Board awarding Burgess payment for the cost of vocational rehabilitation services and an attorney's fee on that issue, is REVERSED. The Superior Court's decision, affirming the Board's award to Burgess of a separate attorney's fee relating to the recovery of his medical expenses, is AFFIRMED.