James E. **ALLEN**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellees.

No. 103,2004.

Supreme Court of Delaware.

Submitted: April 13, 2005.
Decided: July 7, 2005.

---

**59.** *Majority Opinion* at —— (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del.Ch. 1985)).

**60.** *Cincinnati*, 708 A.2d at 992.

John S. Malik, Esq. Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esq. of the Department of Justice, Wilmington, Delaware for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

RIDGELY, Justice.

James E. Allen appeals from his convictions following a jury trial and his sentence imposed by the Superior Court as an habitual offender. Allen raises three arguments in support of his direct appeal. He first argues that the trial court abused its discretion by admitting into evidence a certified copy of a co-defendant's guilty plea agreement without live testimony from that co-defendant. Allen next challenges the trial court's denial of his motion for a mistrial based on one juror's consultation of extraneous materials during jury deliberations. He finally contends that the trial court erred, as a matter of law, in declaring him an habitual offender. We find that the trial court erred when it admitted into evidence a non-testifying co-defendant's guilty plea agreement under the circumstances of this case and that this error requires a new trial. Inasmuch as Allen's first argument is dispositive of his appeal, we need not address his other arguments.

## I.

Allen and co-defendants Isaiah Howard and Kevin McCray were indicted on twenty charges arising from three separate burglary incidents occurring on May 31, 2003, August 3, 2003 and August 27, 2003. Co-defendants Howard and McCray pled guilty to reduced charges prior to trial.

Following a five-day jury trial, Allen was convicted on the charges of attempted burglary in the second degree, criminal mischief under $1,000.00, attempted robbery in the second degree, possession of a firearm during the commission of a felony, aggravated menacing, conspiracy in the second degree and possession of burglary tools. These convictions arose from the August 27, 2003 burglary of a Wal–Mart Store located in Bear, Delaware. The jury was unable to reach a verdict on the remaining charges pertaining to a WSFS Bank incident occurring on May 31, 2002 and an EZ Check Cashing store incident occurring on August 12, 2002.

## II.

Allen's two co-defendants, Howard and McCray, entered into plea agreements with the State prior to trial. Co-defendant Howard testified for the prosecution at Allen's trial. Co-defendant McCray did not testify at trial. At the beginning of his direct examination, co-defendant Howard testified about his plea agreement with the State. At the conclusion of his testimony, the prosecution moved into evidence co-defendant McCray's plea agreement. Defense counsel objected, arguing that the plea agreement was simply hearsay used to bolster co-defendant Howard's testimony. The trial court overruled this objection and allowed the plea agreement into evidence. Specifically, the trial court ruled:

> Well, I think that given the fact that Mr. McCray has been a personality in this case in the sense that his name has come up and his goings and comings have been described in great detail, the fact that he has accepted criminal responsibility for some or all of the charges associated with these events, just completes the picture. So I do think that it has proper relevant value. And it is a certified copy. There's no issue about its authenticity or the reliability of the documents. That's not what I'm hearing.

Ultimately, the trial court gave the following cautionary instruction to the jury as part of the jury charge:

> The State has placed in evidence the guilty plea agreement related to Kevin

McCray. You are instructed that there are many reasons why a person may enter into a guilty plea, including actual guilt, fear of the consequences of going to trial, a more favorable recommendation at sentencing—just to name some. You are not permitted to speculate about why Kevin McCray entered the plea.

Allen contends that the admission into evidence of co-defendant McCray's plea agreement was unfairly prejudicial. He argues that the plea agreement of co-defendant McCray (1) was irrelevant to any trial issue, (2) improperly bolstered the testimony of co-defendant Howard, (3) denied his constitutionally protected right to confront his accusers and (4) created a high probability of speculation by the jury as to why co-defendant McCray entered into the plea agreement.

We generally review a trial court's evidentiary rulings for abuse of discretion.[1] If we conclude that there was an abuse of discretion, we must then determine whether there was significant prejudice to deny the accused of his or her right to a fair trial.[2] However, alleged constitutional violations pertaining to a trial court's evidentiary rulings are reviewed *de novo*.[3]

Evidence of a co-defendant's conviction is not generally admissible in the trial of his or her fellow accused.[4] The same is true that a co-defendant's plea agreement to the same offense or an offense arising out of the same set of circumstances is also generally inadmissible against his or her fellow defendants.[5] We join in this prevailing view[6]. Thus, a co-defendant's plea agreement may not be used as substantive evidence of a defendant's guilt, to bolster the testimony of a co-defendant, or to directly or indirectly vouch for the veracity of another co-defendant who pled guilty and then testified against his or her fellow accused.[7] However, there are limited circumstances in which a prosecutor may seek to introduce a co-defendant's guilty plea. During the direct examination of a co-defendant, a prosecutor may elicit testimony regarding that co-defendant's plea agreement and

---

**1.** *Fuller v. State,* 860 A.2d 324, 329 (Del.2004) (citing *Howard v. State,* 549 A.2d 692, 693 (Del.1988)).

**2.** *Seward v. State,* 723 A.2d 365, 372 (Del. 1999) (citing *Barriocanal v. Gibbs,* 697 A.2d 1169, 1171 (Del.1997); *Nelson v. State,* 628 A.2d 69, 77 (Del.1993); *Van Arsdall v. State,* 524 A.2d 3, 10 (Del.1987); *Reynolds v. State,* 424 A.2d 6, 7 (Del.1980); *Fisher v. State,* 41 A. 184, 186 (Del.1898)).

**3.** *Hall v. State,* 788 A.2d 118, 123 (Del.2001) (citing *Warren v. State,* 774 A.2d 246, 251 (Del.2001)).

**4.** *Kirby v. United States,* 174 U.S. 47, 55–56, 19 S.Ct. 574, 43 L.Ed. 890 (1899).

**5.** *See* V. Woerner, *Prejudicial Effect of Prosecuting Attorney's Argument or Disclosure During Trial That Another Defendant Has Been Convicted or Pleaded Guilty,* 48 A.L.R.2d 1016 (2004) (collecting cases that held that the disclosure during trial that another defendant had been convicted or pleaded guilty was prejudicial error).

**6.** *Id.*

**7.** *See State v. Swims,* 212 W.Va. 263, 569 S.E.2d 784, 793 (2002) (collecting cases and other secondary authority showing the limitations on the prosecution's ability to introduce a co-defendant's plea agreement). *See also Potts v. State,* 458 A.2d 1165, 1169 (Del.1983) (finding that the exclusion of the co-defendants' guilty pleas was not considered a denial of due process where the co-defendants did not confess to exclusive possession of the drugs and finding that the trial court properly exercised its discretion in refusing to admit into evidence the co-defendants' guilty pleas as such could be misconstrued by the jury absent a complete examination into the plea bargaining and the charges).

may actually introduce that agreement into evidence.[8] This admission of the plea agreement into evidence is for the limited purpose of allowing the jury to accurately assess the credibility of the co-defendant witness, to address the jury's possible concern of selective prosecution or to explain how the co-defendant witness has first-hand knowledge of the events about which he or she is testifying.[9] In these situations, a trial court must still give a proper cautionary instruction as to the limited use of the plea agreement and the accompanying testimony about it.[10] The absence of such a limiting instruction is an important factor in determining whether the admission of the guilty plea was harmless error.[11] If the State does not elicit testimony about the plea agreement in its direct examination, it still may be admissible during cross-examination for purposes of impeachment.[12]

In this case, co-defendant McCray did not testify at trial. Consequently, there was no justifiable basis for introducing his guilty plea into evidence. Although the trial court instructed the jury that there are many reasons as to why a defendant may plead guilty and that they were not to speculate as to why co-defendant McCray pled guilty, the trial court's instruction was inadequate. In particular, the trial court failed to expressly instruct the jury of a proper limited purpose for this evidence. We thus have no basis to conclude that the jury did not use the plea agreement as substantive evidence of Allen's guilt, to bolster the testimony of co-defendant Howard or to directly or indirectly vouch for the veracity of co-defendant Howard who pled guilty and testified against Allen at trial. The error in admitting co-defendant McCray's guilty plea agreement in this case requires a new trial.

## III.

Accordingly, the judgments of conviction are reversed and this matter is remanded for a new trial consistent with this opinion.

---

8. *See Swims,* 569 S.E.2d at 791–93 (collecting cases in which courts have allowed the prosecution to offer plea agreements on direct examination of a cooperating co-defendant).

9. *Id.* at 792.

10. *State v. Rucki,* 367 N.J.Super. 200, 842 A.2d 290, 294 (App.Div.2004) (citing *State v.* *Stefanelli,* 78 N.J. 418, 396 A.2d 1105, 1113 (1979)).

11. *Id.* at 296.

12. *Dotterer v. State,* 172 Ind. 357, 88 N.E. 689, 694–95 (1909); *New v. Weber,* 600 N.W.2d 568, 576 (S.D.1999).