ORDER
This 1st day of November 2005, upon consideration of the briefs of the parties, it appears to the Court that:
(1) The employee-appellant, Linda Adams ("Claimant") appeals a judgment of the Superior Court upholding a decision of the Industrial Accident Board ("Board")[1] in favor of employer-appellee, F. Schumacher and Co. Inc. ("Employer"). On November 6, 2003, the Board determined that Claimant sustained a 20% impairment to the cervical spine, but no permanent impairment to the lumbar spine or brain. The Claimant has filed this appeal challenging the Board's determination that Claimant suffered no permanent impairment to the brain. Claimant contends that the Board's decision was not supported by substantial credible evidence and that the Board erred by failing to recognize that in determining permanency ratings, physicians may employ a variety of methods. Because we find no merit in these arguments, we affirm.
(2) Claimant was injured in an industrial accident on January 23, 2001. Claimant slipped, fell, and injured her back while exiting her vehicle in parking lot of the Employer. Following the accident, Claimant began to experience chronic headaches. In addition, Claimant suffered from memory loss and dizziness. Claimant's daily activities and her ability to perform her duties at work were affected negatively by the headaches. Claimant sought permanent impairment benefits for 20% loss of use to the cervical spine, a 10% loss of use to the lumbar spine, a 7% loss of use to the left upper extremity, and a 10% loss of use to the brain. Claimant withdrew the request for permanent impairment benefits related to the left upper extremity.
(3) At the Board hearing, two medical experts testified, Dr. Stephen Rodgers and Dr. Alan Fink. Dr. Rodgers found 10% permanent impairment to the brain based on Claimant's medical records and examination of Claimant. In reaching his conclusion, Dr. Rodgers did not use the permanency rating of the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides"). Dr. Rodgers explained that the AMA Guides offered "little guidance as to a numerical quantification of the severity of [the] post-traumatic headaches suffered by [Claimant]." In establishing the permanency rating, Dr. Rodgers used his clinical judgment and referenced the AMA Pain Guides.
(4) Dr. Fink testified that Claimant did not have any permanent brain impairment. Dr. Fink based his opinion on the AMA Guides. Dr. Fink acknowledged that Claimant initially had some difficulty with her memory after the accident, but has improved. Dr. Fink noted that the Claimant was able to work full-time, take care of herself, and conduct her daily activities. Dr. Fink opined that Claimant's headaches were result of her excessive use of Excedrin and Tylenol and that if Claimant stopped taking the medicine, the symptoms would improve.
(5) Weighing the testimony of Dr. Rodgers, Dr. Fink, and the testimony of Claimant, the Board found that the Claimant had no permanent impairment to the brain. The Board found the testimony of Dr. Fink to be more persuasive than that of Dr. Rodgers. In reaching its conclusion, the Board noted that Dr. Rodgers' opinion "without any specific discussion as to what procedure or which table or charts were followed, does not give [me] sufficient information from which [I] can properly evaluate the reasonableness of the assessment."
(6) The standard of review for the legal conclusions of the Board is de novo.[2] The Superior Court, as an appellate court, reviews the Board's factual findings to determine whether they are supported by substantial credible evidence.[3]
Substantial evidence is more than a mere scintilla, but less than a preponderance of the evidence.[4] Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[5] This Court does not sit as the trier of fact nor does it have authority to weigh the evidence, determine questions of credibility, or make factual findings and conclusions.[6] Moreover, due deference should be given to the experience and specialized competence of the Board.[7]
(7) Claimant's first argument on appeal is that the Board's decision is not based on substantial credible evidence. The Claimant alleges that the Board erred when it failed to consider Dr. Rodgers' testimony concerning the permanent impairment of the Claimants' brain injury simply because Dr. Rodgers did not utilize the AMA Guides for permanency ratings. The Claimant contends that the Board should have at least considered Dr. Rodgers' testimony even if the Board was eventually persuaded by the testimony of Dr. Fink. The Claimant argues that the Board should not have wholly disregarded Dr. Roberts' testimony merely because it did not comply with the principles normally utilized by the Board in determining a permanency rating.[8]
(8) The Employer contends that the Board's decision regarding the permanency of Claimant's brain injury was based on substantial credible evidence. The Employer claims that the Board had discretion to rely on Dr. Fink's credible opinion over Dr. Rodgers' opinion. Contrary to Claimant's argument, the Board did not completely disregard Dr. Rodgers' testimony. The Board considered Dr. Rodgers' testimony but found it unreliable with respect to the permanency of brain impairment. The Board accepted Dr. Rodgers' testimony regarding the degree of permanent impairment to Claimant's cervical spine. Dr. Rodgers' opinion was supported by his reliance on the AMA Guides.
(9) As the Superior Court recognized, this is a classic battle of the experts case. When there are conflicting expert testimonies, the Board is free to choose to accept one and reject the other.[9] When determining the reliability of an expert's opinion, the Board must make a determination of the reliability of the sources on which the expert relied.[10]
Thus, the Board was entitled to rely upon Dr. Fink's opinion that claimant did not have permanent injury to the brain and reject Dr. Rodgers' opinion as unreliable.
(10) Claimant's second argument on appeal is that the Board erred by failing to recognize that physicians may employ a variety of methods other than those commonly used in determining a permanency record. The Claimant cites to an unpublished opinion of the Board,[11] in which the Board declared that going outside the AMA Guides was sometimes necessary.[12]
Claimant argues that the AMA Guides provide little guidance with regard to permanent impairment ratings for the headaches Claimant suffered. Therefore, Claimant contends that the facts of this case require the Board to deviate from the AMA Guides.
(11) The Employer argues that the issue whether the Board should strictly follow the AMA Guides is not relevant to the appeal. Rather, the Employer contends that the real issue is whether the Board's opinion was supported by substantial evidence. Here, the Board's decision is based on substantial evidence. The Board acted within its discretion in accepting Dr. Fink's testimony to be more persuasive.
(12) The Board committed no error in reaching its opinion that Claimant did not suffer from permanent impairment to the brain. The Board did not disregard Dr. Rodgers' opinion completely. Rather, the Board explained that it was not supported by sufficient information that would allow the Board to assess its reasonableness. Furthermore, Dr. Rodgers' rating was not supported by Claimant's own complaints as to headaches several times a week, more than two years after the accident. Weighing the testimony of Dr. Rodgers, Dr. Fink and Claimant herself, the Board did not err in concluding that Claimant suffered no permanent impairment to the brain. The Superior Court did not err when it affirmed the decision of the Board.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
[1] Pursuant to the parties' stipulation, the Matter was decided by a Workers' Compensation Hearing Officer in lieu of the Board, pursuant to the Delaware Code.
[2] Scheers v. Indep. Newspapers, 832 A.2d 1244, 1246 (Del. 2003).
[3] A. Mazzatti Sons, Inc. v. Ruffin, 734 A.2d 1120 (Del. 1981); Walden v. Georgia-Pacific Corp., 738 A.2d 239 (Del. 1999).
[4] Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981).
[5] Id.
[6] Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del. 1965).
[7] 2.29 Del. C. § 10142(d); Histed v. E.I. duPont de Nemours Co., 621 A.2d 340, 342 (Del. 1993).
[8] Jackson v. State, 1997 WL 1048181 at *5 (Del.Super.Ct.).
[9] Reese v. Home Budget Center, 619 A.2d 907, 910 (Del. 1992); DiSabatino Bros., Inc. v. Wortman, 453 A.2d 102, 105-6
(Del. 1982).
[10] Fensterer v. State, 509 A.2d 1106, 1110 (Del. 1986).
[11] Fogbawah v. Carman Ford, IAB, No. 1148704, 2001 Wright, Hearing Officer, Daniello, Hearing Officer (March 8, 2001).
[12] "While normally the Board considers the AMA Guides to be a useful tool in evaluating impairments, it is important to remember that it is only a tool." Id. at 210.