IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BAKR DILLARD, | § | |
| | § | |
| Defendant Below, | § | No. 153, 2024 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. N2301010356A |
| | § | |
| Appellee. | § | |

Submitted: November 18, 2024
Decided:  December 19, 2024

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After considering the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1)    The appellant, Bakr Dillard, appeals from his conviction and sentencing for drug- and firearm-related charges.  Dillard was arrested during the execution of a search warrant in Wilmington on January 20, 2023.  Early that morning, dozens of federal, state, and local law enforcement officers surrounded 934 Spruce Street, announced their presence, and ordered the occupants to exit the residence. Approximately four minutes after the announcements began, two men appeared at the back door of the house.  One of the men remained in the doorway.  The other,

later identified as Dillard, stepped out and threw something toward the roof of a neighboring property. A duffel bag containing clothes, a 9-millimeter gun magazine, and drug-cutting agent landed on the neighbor's roof, and a black plastic bag fell into the neighbor's yard. The black plastic bag contained more than 124 grams of cocaine and nearly 900 smaller bags of heroin or fentanyl.

(2) A few minutes later, three adults and three children exited the front door of the house, obeyed police commands, and were detained. A few minutes after that, three men ran out the back door. The first, Dillard, ran southbound through the alleyway behind the home toward the intersection of 9th and Spruce Streets, near where a K-9 unit was positioned. The K-9 unit moved into the alleyway, and the officer saw Dillard running toward him. The officer announced the K-9's presence, and Dillard ran into the back yard of 912 Spruce Street, where the K-9 unit apprehended him with other officers' assistance. After placing the K-9 in his car, the officer returned to the back yard of 912 Spruce Street and found a Glock 9-millimeter semiautomatic handgun a few feet inside the entrance to the yard. The gun had a round in the chamber but was missing its magazine. Other officers searched the alleyway along the route that Dillard had traveled and found a bundle of money totaling $3,000, a set of keys, and a loaded extended magazine for a 9-millimeter firearm on the ground. Dillard also had a small bag of marijuana and $1,156 in his pocket when he was taken into custody.

(3)     The second person who exited the back door of 934 Spruce Street, Zakeer Washington, started running but quickly surrendered to officers in a nearby field.  The third person, Tavion Washington, jumped fences in several yards but surrendered to officers when he reached a fence enclosing a yard that was occupied by an aggressive dog.

(4)     After Dillard and the others were taken into custody, a tactical team breached the front door and cleared the house.  Upon entering the house, investigators observed a substantial quantity of drugs on the dining room table, along with drug-packaging materials and tools.  In various packages and containers in the dining room and the room by the back door, officers found drugs, cutting agent, and more drug-packaging materials and tools.  In total, officers recovered more than 500 grams of cocaine; approximately 50 grams of heroin, fentanyl, or acetyl fentanyl; and more than 3,000 grams of Delta-9-THC (marijuana).  In a brown bag on a dresser near the back door, an officer found a loaded Smith & Wesson 36-caliber handgun and magazine.  Behind the dresser, the officer found a loaded Canik 9-millimeter handgun and magazine.

(5)     The jury found Dillard guilty of two counts of drug dealing under 16 *Del. C.* § 4752(a)(1)[1] (one count as to cocaine and one count as to heroin);[2] two counts of drug possession under 16 *Del. C.* § 4752(a)(2)[3] (one count as to cocaine and one count as to heroin);[4] one count each of drug dealing under 16 *Del. C.* § 4753(a)(1) and drug possession under 16 *Del. C.* § 4753(a)(2) as to the marijuana;[5] possession of a firearm during the commission of a felony ("PFDCF") as to the Glock handgun; second-degree conspiracy; and possession of drug paraphernalia. The jury found Dillard not guilty of PFDCF charges relating to the Smith & Wesson and Canik handguns. The Superior Court later granted the State's habitual-offender petition as to the PFDCF count and merged the drug-dealing and drug-possession charges for sentencing. The court sentenced Dillard to a total of 72 years of incarceration, suspended after 29 years for probation, and a $100 fine.

---

[1] *See* 16 *Del. C.* § 4752(a)(1) (making it unlawful to "[m]anufacture, deliver, or possess with intent to manufacture or deliver a controlled substance in a Tier 3 quantity").

[2] *See id.* § 4716(b)(4) (providing that cocaine is a Schedule II controlled substance); *id.* § 4714(c)(10) (providing that heroin is a Schedule I controlled substance); *id.* § 4751C(1)a-b (establishing Tier 3 quantity thresholds of twenty-five grams for cocaine and five grams for heroin).

[3] *See id.* § 4752(a)(2) (making it unlawful to "[p]ossess a controlled substance in a Tier 3 quantity").

[4] *Supra* note 2.

[5] *See id.* § 4753(a)(1) (making it unlawful to "[m]anufacture, deliver, or possess with intent to manufacture or deliver a controlled substance in a Tier 2 quantity"); *id.* § 4753(a)(2) (making it unlawful to "[p]ossess a controlled substance in a Tier 2 quantity"); *id.* §§ 4701(28), 4714(d)(19) (defining marijuana and providing that marijuana is a Schedule I controlled substance); *id.* § 4751C(2)c (establishing Tier 2 quantity threshold of 1500 grams for marijuana).

(6) In this direct appeal, Dillard's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Dillard's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Dillard of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Dillard of his right to supplement counsel's presentation. Dillard responded with points that he wanted to present for the Court's consideration, which counsel included with the Rule 26(c) brief. The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

(7) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[6] This Court also must conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[7]

(8) Dillard challenges two statements that the prosecutor made during her opening statement, claiming that they constituted prosecutorial misconduct. Defense counsel did not object to either of the statements during trial, and we

---

[6] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[7] *Penson*, 488 U.S. at 82.

therefore review for plain error.[8]  We first "examine the record *de novo* to determine whether prosecutorial misconduct occurred."[9]  "If we determine that no misconduct occurred, our analysis ends."[10]  If we determine that the prosecutor engaged in misconduct, "we move to the second step in the plain error analysis" and consider, under the *Wainwright* standard, whether the error was "'so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.'"[11]  Under *Wainwright*, "'the doctrine of plain error is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.'"[12]  If we conclude that the misconduct does not warrant reversal under that standard, we consider whether the prosecutor's statements are repetitive errors that warrant reversal because they cast doubt on the integrity of the judicial process.[13]

(9)    First, Dillard argues that the State engaged in prosecutorial misconduct when the prosecutor said, during her opening statement:  "You saw and heard some

---

[8] *See Baker v. State*, 906 A.2d 139, 150 (Del. 2006) ("Where defense counsel fails to raise a timely and pertinent objection to alleged prosecutorial misconduct at trial and the trial judge does not intervene *sua sponte*, we review only for plain error.").

[9] *Id.*

[10] *Id.*

[11] *Id.* (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (emphasis omitted)).

[12] *Id.* (quoting *Wainwright*, 504 A.2d at 1100).

[13] *Id.*

things about other defendants. Those other defendants have resolved their cases."[14]

After careful consideration, we find no plain error.

(10) "Evidence of a co-defendant's conviction is not generally admissible in the trial of his or her fellow accused."[15] During the opening statement, the prosecutor played clips of various videos—including from police bodyworn cameras and a drone—that were recorded during the execution of the search warrant at 934 Spruce Street. Then, near the end of the opening statement, the prosecutor said:

> You saw and heard some things about other defendants. Those other defendants have resolved their cases. The case today is only about Mr. Dillard and his actions during this case and how he is involved.[16]

By commenting that other individuals had "resolved" their cases, the prosecutor did not submit evidence of their "conviction"—the others might have been acquitted, or the charges against them might have been dismissed. But even assuming that the passing, nonspecific reference to other individuals' cases was improper, we cannot conclude that it was sufficiently prejudicial to jeopardize the fairness and integrity of the trial, nor that it was a repetitive error warranting reversal.[17]

---

[14] Appendix to Opening Brief at A89.

[15] *Allen v. State*, 878 A.2d 447, 450 (Del. 2005).

[16] Appendix to Opening Brief at A89-90.

[17] *Cf. Wheatley v. State*, 465 A.2d 1110, 1113 (Del. 1983) (affirming denial of motion for mistrial based on prosecutor's comment during opening statement to the effect that the defendant had an altercation with a codefendant who had been "tried separately").

(11)   Second, Dillard argues that the prosecutor misrepresented the evidence by saying, during her opening statement, that the jury would hear evidence that a balaclava-style face mask with Dillard's DNA on it was found "in a bag of drugs in the house."[18]  Detective Schupp of the Wilmington Police Department, who was in charge of executing the search warrant at 934 Spruce Street,[19] testified that the green, reusable shopping bag in which the mask was found did not itself contain drugs.[20] Prosecutors may not misrepresent the evidence presented at trial.[21]  But to the extent that the prosecutor's statement that the mask was found "in a bag of drugs" was inconsistent with the evidence later presented at trial, the evidence showed that the green bag that contained the mask was located in a pile in the dining room that included two large bags of marijuana; a cooler holding multiple, large, heat-sealed packages of marijuana; and a bag of new, unused plastic drug-packaging capsules.[22] The State did not repeat during the closing statement that the mask was in a bag with drugs; rather, the prosecutor said that the mask was "buried beneath heat sealed bags full of marijuana next to a table full of drugs and a scale."[23]  Given the evidence

---

[18] Appendix to Opening Brief at A88.

[19] *Id.* at A303.

[20] *Id.* at A546-47.

[21] *Miller v. State*, 270 A.3d 259, 267 (Del. 2022).

[22] Appendix to Opening Brief at A340-42, 350-52.

[23] *Id.* at A616.  Moreover, defense counsel in summation emphasized that the bag containing the mask did not contain any drugs.  *Id.* at A632.

8

presented and the prosecutor's opening and closing statements as a whole, we find no plain error arising from the challenged statement.

(12) We have reviewed the record carefully and conclude that Dillard's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Dillard's counsel made a conscientious effort to examine the record and properly determined that Dillard could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

9